Argued January 22, affirmed March 1, reconsideration denied April 7, petition for review denied April 27, 1976

STATE OF OREGON, *Respondent,*
*v.*
TIMOTHY BRYON PRUETT, *Appellant.*
(No. 75 0893, CA 4731)
546 P2d 475

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for appellant.

*James A. Hill,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

Defendant, Timothy Bryon Pruett, was convicted after a jury trial of manslaughter. The indictment charged that defendant had recklessly caused the death of Barbara Jean Smith by striking and bodily throwing her during an eight-day period, October 12-20, 1974.

Defendant appeals, contending that the trial court erred (1) in denying his motion for a directed verdict and (2) in instructing the jury on aiding and abetting, on the state's alternate theory that defendant was his wife's accomplice in the homicide.

The deceased was a 26-year-old, mentally-retarded ward of the state. The record shows that she was of slight build, only 4' 7" tall and weighed but 70 pounds. She had previously been cared for at the state Fairview Hospital and Training Center in Salem. At the time of her fatal injury, however, she was in foster care in the home of defendant and his wife under contract with the state Welfare Department and Fairview Hospital as part of a plan to aid in the deceased's treatment.

The evidence offered by the state was that the deceased ultimately died as a result of injuries to her pancreas after she had been thrown against a bed at the defendant's home.

The prosecution's proof that defendant threw or knocked her against the bedpost was based principally on a tape-recorded statement made to the police by the defendant on February 7, 1975. In this statement defendant admitted that on several occasions he struck the deceased, and that on one occasion he threw or knocked the deceased stomach-first onto a bedpost with enough force to break the bed. This assault, which the evidence established ultimately led to her death, occurred during the same period as the other assaults. At the trial, however, defendant took the stand and denied the truthfulness of the taped state-

[ 557 ]

ment, and implied that his wife had thrown the deceased against the bedpost. The wife also took the stand and testified in effect that defendant had never harmed the deceased, and that she, and not defendant, was the guilty party.

According to the testimony of defendant and his wife, the victim, unlike the other retarded young woman who was also being cared for by them, was difficult to train and would not respond to their directions, particularly in such matters as eating habits and toilet training.

In defendant's first assignment he contends that the act of throwing the victim against the bedpost did not as a matter of law constitute a substantial and unjustified risk that the deceased would be mortally injured within the meaning of ORS 163.125.

In answer the state argues that defendant did not raise this issue in the trial court, and therefore it cannot be raised for the first time on appeal.

We believe that defendant's counsel did in effect make this contention at trial. We cannot, however, agree with defendant's contention. Under the facts presented here and viewing the evidence in the light most favorable to the state, *State v. Nix,* 7 Or App 383, 491 P2d 635 (1971), we conclude that the act of knocking or throwing a person as small as the deceased stomach-first against the bedpost with such force as to break the bed could constitute a substantial and unjustified risk within the meaning of ORS 163.125 that the deceased could become mortally injured. Accordingly we conclude that this issue was properly submitted to the jury.

Defendant's second assignment, namely, that the trial judge erred in instructing the jury on aiding and abetting, likewise cannot be sustained. To support this contention defendant relies on *State v. Townsend,* 237 Or 527, 392 P2d 459 (1964). In that case there was no

[ 558 ]

evidence whatsoever in the record to support an aiding and abetting instruction.

■ A trial judge is allowed considerable latitude concerning the content of his instructions. This discretion includes power to instruct on all questions and issues growing out of testimony without a request from either party. *State v. Smith,* 18 Or App 39, 523 P2d 1048 (1974).

■ Unlike in *Townsend,* here all the evidence does not indicate that defendant committed all of the overt acts necessary to constitute the crime. At trial defendant repudiated his prior taped statement and implied that his wife had caused the fatal injuries. Secondly, defendant's wife took the stand and contradicted her prior statements to the police which indicated that her husband had caused the fatal injuries, and instead claimed that she herself was the guilty party. This contradictory evidence offered by defendant and his wife raised an issue of whether defendant acted alone or somehow in conjunction with his wife to cause the fatal injuries to the deceased. We conclude that the instruction on aiding and abetting was not improper in view of the testimony and theory put forward by the defense.

Affirmed.

**SCHWAB, C. J.,** dissenting.

There is evidence which would have supported a finding that the defendant committed the crime, or that the defendant was not guilty because his wife committed the crime. As I understand the record there is no evidence to support a finding that the defendant aided his wife in the commission of the crime. Thus it was error, and I think prejudicial, to instruct the jury on aiding and abetting. I would reverse and remand for a new trial.

I therefore respectfully dissent.